**SORENSON et al. v. DAWDY et al.**

No. 14784.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 20, 1946.

D. A. Webb, of Fort Worth, for appellant.

Holloway, Hudson & Shirley and Preston Shirley, all of Fort Worth, for appellee Autocredit, Inc.

SPEER, Justice.

Michael Sorenson and Emil Sorenson, doing business as Capitol Securities Company, hereinafter called plaintiffs in garnishment, held a judgment against H. A. Dawdy, and procured a writ of garnishment against First National Bank of Fort Worth, Texas, hereinafter called garnishee. The garnishee answered; the pertinent parts thereof were in this language:

"That it is not now nor was it at the time said writ of garnishment was served upon it indebted in anything or amount to the defendant H. A. Dawdy; that at the time said writ was served upon it the defendant (garnishee) bank had in its possession a cashier's check in the sum of $425.00 payable to the order of H. A. *Dowdy;* that the sum of $425.00 is now being held in said bank in 'Garnishment Funds' account to the credit of H. A. *Dowdy.*" There was

a stipulation that "H. A. Dawdy" and "H. A. Dowdy" was one and the same person.

Autocredit, Incorporated, filed a plea of intervention and will be referred to by us as intervener. The nature of intervener's pleadings will be mentioned later in this discussion, under points of error assigned.

Trial was to the court without a jury. Judgment was entered that plaintiff in garnishment take nothing and that intervener have judgment against garnishee for the amount of the cashier's check held by it. From this judgment plaintiffs in garnishment have appealed.

Plaintiffs in garnishment (appellants here) rely upon two points of error, which points are discussed together in their brief. They are in substance that as a matter of fact as well as of law, plaintiffs in garnishment had a right superior to that of intervener, to the funds in the hands of the garnishee. Under these points they argue with much earnestness that the court erred in denying them a recovery and in entering judgment for the intervener.

Plaintiffs in garnishment predicate much of their discussion upon the theory that the plea in intervention asserted that intervener was entitled to the funds because it had possession of the title papers to, and a mortgage lien on an automobile owned by Dawdy, and that Dawdy desired to sell the automobile; that the buyer wanted to borrow money from the Bank (garnishee) with which to make payment; that Dawdy borrowed the title papers from intervener to present to garnishee so that garnishee could have title placed in the purchaser properly showing garnishee's lien thereon; that Dawdy promised intervener when he procured the title papers that "he would go directly to the garnishee bank and procure from it the money with which to pay and discharge the indebtedness due the intervener." The quoted language is in the plea of intervener, but there is also language therein susceptible to a much broader construction.

They contend that the promise by Dawdy to pay intervener out of the proceeds of the loan the purchaser was procuring from garnishee did not have the effect of an assignment of that fund to intervener nor to give intervener a superior right to that fund over plaintiffs in garnishment after their writ was served. There would be some merit in the contention if the record sustained the construction placed on the testimony in this case by plaintiffs in garnishment.

No answer was made by plaintiffs in garnishment to the plea of intervention, and of course no exceptions were taken to its sufficiency.

At the trial, Dawdy testified that he was indebted to intervener in the sum of $500; that he had given intervener a note for the amount and a chattel mortgage lien on the automobile involved to secure the indebtedness; that he had turned the title papers over to intervener in connection with the note and mortgage; that he found a sale for the car and the purchaser expected to borrow $425 of the purchase price from garnishee bank; the bank had asked for the title papers from which to make the transfer of title to the purchaser and to procure title certificate from the State Highway Department showing its lien. Dawdy further testified that he apprised intervener of all this and that if the representative of intervener would draw up the transfer to the purchaser and let him take all title papers to the garnishee Bank, intervener could credit his (Dawdy's) note with all the proceeds from the sale of the car, since as he expressed it, "The Dodge (car) in reality belonged to Autocredit, Inc." He said he told intervener's manager that if he would let him take the title papers to the garnishee Bank for the Bank to perfect the loan to the purchaser with which to pay for the car, he would have the garnishee Bank to pay to intervener the money it was advancing in payment thereof for the purchaser. He also testified that he advised the garnishee Bank that Autocredit, Inc., had a mortgage on the "Dodge Sedan" and that the proceeds of their loan for the purchase money should be turned over to Autocredit, Inc.; that he had agreed with intervener that the moneys the bank advanced should be paid to intervener. That garnishee Bank's representative told him on the telephone that if he would deliver the title papers so it could get the title into the purchaser showing the Bank's

lien, the check to Autocredit, Inc. (intervener), was ready; that he delivered the title papers but did not pick up the check; that he did not claim the funds in the bank that were being advanced on the purchase price of the car since he had assigned his title over to intervener; that he had had an express understanding with the manager of intervener to the effect that if the manager would turn over the title papers to either the bank or the purchaser, the money advanced by the bank would be delivered to Autocredit, Inc. No representative of the garnishee Bank was called to testify, and Dawdy's testimony with respect to what he advised the Bank stands uncontradicted.

The manager of intervener (not with it at the time of trial) testified that he delivered the title papers to Dawdy upon the promise from Dawdy that as soon as the deal with the purchaser was closed at the bank a check would be coming from the bank to Autocredit, Inc., to take care of Dawdy's note with intervener.

It appears that the loan made by garnishee Bank to the purchaser with which to pay the purchase money, was made out by the bank in a cashier's check payable to the order of Dawdy, although the Bank had been advised to make it payable to Autocredit, Inc. Dawdy testified to this and no one states the contrary. The cashier's check in this form was being held by the garnishee Bank when the writ of garnishment was served on it.

Plaintiffs in garnishment argue here that there were no pleadings by intervener to support the testimony of Dawdy, above set out; but insist that intervener is bound by the state of facts pleaded by it, to the effect that it had delivered to Dawdy the title papers and authorized him to sell the car and to pay it out of funds to be received by him at the sale; it is also urged that intervener had no lien on the car by virtue of its chattel mortgage, since such purported instrument was void under the laws of Texas referable to motor vehicles.

■ We shall first notice the contention in regard to the pleading of intervener. The record before us discloses clearly that the testimony above mentioned was offered by intervener without objection by plaintiffs in garnishment. Under Rule 67, Texas Rules of Civil Procedure, when issues not raised by the pleadings are tried by express or implied consent of the parties, they will be treated in all respects as if they had been raised in the pleadings. Harris v. Harris, Tex.Civ.App., 174 S.W.2d 996; Bednarz et al. v. State, 142 Tex. 138, 176 S.W.2d 562. Under these authorities the testimony above set out may not be disregarded for lack of pleadings.

■ The contention that the chattel mortgage lien on the car in controversy, claimed by intervener, was void under the Certificate of Title Act, Vernon's Texas P.C. Art. 1436—1, cannot be sustained. It has long been held in this state that a chattel mortgage on personal property is good as between the parties and those having actual knowledge of its existence, hence it was not void. See Commercial Credit Co. v. American Mfg. Co., Tex.Civ.App., 155 S.W.2d 834, writ refused.

Plaintiffs in garnishment (appellants here) do not seriously insist that intervener was not entitled to the judgment entered if it had an assignment of the funds in controversy. In other words, they say in their brief, they were entitled to a judgment for the funds, "unless intervener could plead and show as a matter of law that the assignment of such funds in the possession of the Bank had been made." We have already observed that the manner in which the evidence was introduced did not depend upon the nature of intervener's pleadings.

■ It should be stated just here that no request for findings of fact and conclusions of law was made and of course none were filed. The trial court entered judgment for intervener as above indicated, and the rule is settled that in the absence of findings of fact and conclusions of law it is the duty of the appellate court to presume that the trial court, when, as in this case no jury is had, found all necessary facts which have support in the evidence in such way as to sustain the judgment. Park Presbyterian Church of Italy v. Wm. Cameron & Co., Inc., Tex.Com.App., 58

S.W.2d 63; Allison v. Groppenbacher, Tex. Civ.App., 142 S.W.2d 528, writ refused; Ellis v. Eden-Birch Lumber Co., Tex.Civ. App., 179 S.W.2d 323, writ refused, want of merit.

When plaintiffs **in** garnishment caused the writ to issue against the garnishee Bank seeking to hold the funds in its hands as the property of Dawdy, they acquired the same right to the funds that Dawdy then had, and no more; some courts express it as that if plaintiff in garnishment "steps into the shoes of" the debtor.

Clearly if Dawdy had previously assigned the funds to intervener before the writ of garnishment was served, he could not thereafter claim the funds nor could plaintiffs in garnishment by virtue of their writ of garnishment, claim it, for they acquired no greater rights than Dawdy had. New York Life Ins. Co. v. Patterson & Wallace, 35 Tex.Civ.App. 447, 80 S.W. 1058, writ refused. There are many decisions by our Courts of Civil Appeals following the rule announced; they may be found in Sheppard's Citations.

This brings us to the question of whether or not the acts of Dawdy and the representative of the intervener, taken in connection with all the facts and circumstances before the trial court, amounted to an equitable assignment of the funds in the hands of garnishee. Dawdy owed intervener $500, to secure which he had executed a mortgage lien on the car and delivered to intervener the certificate of ownership of the automobile. Dawdy found a buyer who was to borrow from garnishee $425 with which to pay part of the purchase money. If no one else had been involved Dawdy would have received that money from garnishee. But in the transaction with intervener Dawdy agreed that intervener should have the money that he would otherwise have received from garnishee—that the check or other evidence of that fund should be made directly to intervener in payment or part payment of his obligation to intervener. The garnishee Bank was advised of this transaction, but through error had issued a cashier's check payable to the order of Dawdy and so held it when the writ of garnishment was served. We hold that these facts were sufficient to constitute an equitable assignment of the funds to intervener. " 'An equitable or constructive assignment does not depend upon any particular form of words, but the court of equity constructs the assignment out of the situation of the parties.' " C. W. Hahl & Co. v. Hutcheson, Campbell & Hutcheson, Tex.Civ.App., 196 S.W. 262, 266, writ refused. An assignment may be shown by either direct or circumstantial evidence. West Realty & Investment Co. v. Hite, Tex.Com.App., 283 S.W. 481.

When, as in this case, Dawdy was indebted to intervener, had given a mortgage lien on the automobile to secure his debt, was desirous of paying, wanted to sell the car to procure funds with which to pay, he had the undoubted right to promise intervener that he would have the Bank, thereafter becoming indebted to him, to make payment, not to him, but to intervener; the intervener agreeing thereto and the Bank being advised of the arrangements and instructed to make payment to intervener, such transaction constituted an equitable assignment by Dawdy to intervener of the particular funds in controversy. By the agreement with intervener and instruction to the Bank, Dawdy lost ownership of the fund and intervener became the equitable owner of it, as against a subsequent garnishing creditor. Wood et al. v. Amarillo Improvement Co., 88 Tex. 505, 31 S.W. 503. In Slaughter v. First Natl. Bank, Tex.Civ.App., 18 S.W.2d 754, writ refused; Gardner v. Planters' National Bank, 54 Tex.Civ.App. 572, 118 S.W. 1146, writ refused; Vaughn v. Farmers & Merchants National Bank, 59 Tex.Civ. App. 380, 126 S.W. 690, writ refused; Craig v. Dunlap, Tex.Civ.App., 267 S.W. 1007, writ dismissed; Hatley v. West Texas Nat. Bank, Tex.Com.App., 284 S.W. 540, transactions similar in many respects to the one before us were considered and held to constitute an equitable assignment of funds.

Under the authorities above cited, we are convinced that the trial court entered

a proper judgment; the points of error assigned are overruled and the judgment will be affirmed.

It is so ordered.