**BANCO LONGORIA, S. A., Appellant,**

v.

**EL PASO NATIONAL BANK, Appellee.**

No. 4124.

Court of Civil Appeals of Texas.

Eastland.

April 14, 1967.

Rehearing Denied May 5, 1967.

**2**

Potash, Cameron, Bernat & Studdard, Don Studdard, El Paso, for appellant.

Hardie, Grambling, Sims & Galatzan, Thornton Hardie, El Paso, for appellee.

COLLINGS, Justice.

Banco Longoria, S. A., brought suit against El Paso National Bank to recover funds deducted from plaintiff's bank account to pay for an insufficient fund check drawn by Ganado y Carnes, S. de R. L. on its Chihuahua branch. The defendant contends that payment of the check had been protected in a telephone conversation between officers of the two banks and that there was an equitable assignment to the El Paso bank of funds in the amount of $10,000.00 represented by a check drawn by Phil Stadtler & Son. The case was tried before the court without a jury and judgment rendered decreeing that plaintiff take nothing. Banco Longoria, S. A., has appealed.

The record shows that on or about February 2, 1965, Enrique Romay and Gene Sykes, officers of Ganado y Carnes, presented to Mr. Rutledge, an officer of the El Paso National Bank in El Paso, and attempted to cash the check of Phil Stadtler & Son in the sum of $10,796.45 dated February 1, 1965, and signed by Phil Stadtler, Jr. The check was payable to Ganado y Carnes, S. de R. L., and drawn on Wells-Fargo Bank of Modesto, California. Mr. Rutledge refused to cash the check. Romay then told Mr. Rutledge that he could get immediate credit on the check at a bank in Chihuahua, Mexico and that when he had done so he would come back to El Paso and open an account in the El Paso National Bank out of the account opened on said check in the Chihuahua bank. Rutledge suggested that if such immediate credit was obtained in the Chihuahua bank that Romay should bring a certified check from that bank for deposit in the El Paso bank. On that same day Romay went to Chihuahua, contacted Mr. Laguette, manager of appellant Banco Longoria, and opened an account in that bank in the name of Ganado y Carnes, S. de R. L., with a deposit of the $10,796.45 Stadtler check. This check was subsequently honored and paid by the bank in California.

Enrique Romay testified in substance that at the time he opened the account in the Chihuahua bank Mr. Laguette called Wells-Fargo Bank in Modesto in his presence and then gave immediate credit on the Stadtler check, gave him a deposit slip and took his signature card on the account of Ganado y Carnes. Romay testified that he told Mr. Laguette that he would deposit a check on that account for $10,000.00 in the El Paso National Bank; that Mr. Laguette told him that he would guarantee payment of that check to the El Paso National Bank. Romay further testified that he drew the check for $10,000.00 and sent it to his associate, Gene Sykes, in El Paso to be deposited in the El Paso bank. The $10,-000.00 check in question with endorsements thereon was introduced in evidence. It was not a certified check. Romay testified that he heard Mr. Laguette guarantee the $10,000.00 check to Mr. Rutledge on the telephone. He stated that he told Mr. Laguette he needed the check guaranteed because he had to pay duties on cattle. He further stated that he paid Banco Longoria through checks on his personal

accounts and the account of Ganado y Carnes in that bank all the money he owed Banco Longoria, including what he owed on drafts for $17,500.00, $7,000.00 and $5,000.00, except $10,000.00 check on the Ganado y Carnes' account. Ganado y Carnes drew out of its account in El Paso National Bank on February 4, 1965, $8,000.00 to pay duties on cattle.

There was a conflict in the evidence. Mr. Laguette testified that at the time the deposit of the Stadtler check was made in his bank no special instructions were given to him by Romay concerning the deposit; that the deposit was not for any specific purposes and there was no mention at that time that Romay would draw a check for $10,000.00 to start a new account in the El Paso National Bank. He testified that Mr. Rutledge called him about the matter and that he told Rutledge that he could not protect or guarantee the check because Ganado y Carnes had merely left some checks for collection. He stated that the $10,000.00 check in question was received in Chihuahua on February 11th and was returned with the notation made by him as follows: "drawn against uncollected funds." He stated that he did not know at that time that the Stadtler check had been paid.

Mr. Rutledge testified in substance that he first saw the Phil Stadtler check on the 1st or 2nd of February, 1965; that Mr. Romay and Mr. Sykes wanted to deposit the check in the El Paso National Bank for immediate credit so they could pay for some cattle. He testified that when he refused to give immediate credit on the Stadtler check Mr. Romay said he would fly to Chihuahua and get immediate credit on the check at Banco Longoria or Banco Provincial, and that he Rutledge, informed them to bring a certified check and that he would then open the account in El Paso National Bank and take care of transferring the money for the cattle. Mr. Rutledge further testified that on February

3, 1965, Mr. Sykes brought him the $10,000.00 check in question which was not certified; that he told Mr. Sykes that certified funds would be required; that Mr. Sykes told him that he could call Mr. Laguette about the matter; that he then called Mr. Laguette by telephone and Mr. Laguette assured him that the account had been opened in Banco Longoria with an immediate credit on the Stadtler check and that he would protect the $10,000.00 check if the signature was good; that Laguette later in the day called back and said he was giving Romay immediate credit on the Stadtler check because he had called Wells-Fargo Bank in Modesto and had been informed that he could get immediate credit because the check was good, that the signature on the $10,000.00 check had been verified and that he would honor the check. Mr. Rutledge testified that he took this as an assignment of funds on the deposit of the Stadtler check. He further testified that the Stadtler check was paid by the drawee bank in California on February 8, 1965, as shown by the stamp thereon; that appellee advised Banco Longoria on the 8th and on the 10th of February of such payment; the deposit slip for $10,000.00 in El Paso National Bank was introduced in evidence; this deposit was made after hours on February 3rd but went through the bank as of February 4th, 1965; the statement of Ganado y Carnes with El Paso National Bank was also introduced by appellee. Rutledge testified that on February 9, 1965 appellee received from appellant's Juarez branch credit advisor dated February 8th showing credit to appellee for the $10,000.00 check; that the $10,000.00 check was charged to the account of Banco Longoria in the El Paso National Bank on February 9th out of the Stadtler check. Mr. Rutledge stated that the $10,000.00 check was protected, that the Stadtler check was paid and that Banco Longoria knew it. In response to the request of appellee the court filed the

**4**

following findings of fact and conclusions of law:

## "FINDINGS OF FACT

A. On or about February 2, 1965, Enrique Romay and Gene Sykes, who were officials of Ganado y Carnes, S. de R.L., presented to the El Paso National Bank a draft in the sum of $10,796.45. This draft was drawn against a bank in Modesto, California, and was payable to Ganado y Carnes, and the El Paso National Bank refused to give immediate available credit on such draft to such Mexican Company.

B. Thereafter, Mr. Romay opened an account with Plaintiff's Branch Bank in Chihuahua, Mexico, using the draft mentioned in paragraph A. above. This draft was subsequently honored and paid by the drawee bank in California. The Mexican Bank, through its officials, notified the El Paso Bank that they were giving immediate credit to Mr. Romay on the bank draft mentioned in paragraph A. above, and thereafter, Ganado y Carnes drew a check on the account opened with the Chihuahua, Mexico, Bank. This check was presented on or about February 3, 1965, to the El Paso National Bank with the request that the El Paso Bank open an account in favor of the Mexican firm, in the amount of such check, which was $10,-000.00; and that the account with the El Paso National Bank be made immediately available in the amount of said check.

C. Mr. Rutledge, an official of the Defendant Bank, on two occasions was assured by telephone by officials of the Mexican Bank that the $10,000.00 check was good and that the Mexican Bank would 'protect' the El Paso National Bank; accordingly, the account was opened in the El Paso National Bank and credit in the amount of $10,000.00 was made immediately available to Ganado y Carnes, the Mexican Firm.

D. Thereafter, on February 8, 1965, the branch of the Mexican Bank in Juarez, Mexico, credited the El Paso National Bank for the $10,000.00 above mentioned, and on February 9, 1965, the account of the Plaintiff Bank with the Defendant Bank was charged with the amount of said check, that is, $10,000.00.

E. The Court further finds that the $10,000.00 check was returned by the Mexican Bank to the Defendant Bank on February 17, 1965 (within the time provided by law) with the notation 'drawn on uncollected funds.'

F. The $10,000.00 check thereafter was on or about February seventeenth returned to the Plaintiff Bank by the Defendant Bank with the understanding that the Mexican Bank would recognize its oral promises mentioned above respecting such check.

G. About March 23, 1965, the $10,000.00 check was once again sent back to the Defendant Bank by the Mexican Bank as a collection item, to be collected by the Defendant Bank for the account of the Mexican Bank. In the meantime, the Mexican Bank had on two different occasions agreed to the charge of $10,-000.00 against it in its account with the El Paso National Bank, made on February ninth on account of said check. The Court finds as a fact that the Mexican Bank on many occasions recognized that it was the owner of the $10,000.00 check and that the defendant Bank was holding such check in an effort to collect it for the Mexican Bank.

## CONCLUSIONS OF LAW

"The Court concludes as a matter of law that under the facts as found by the Court in this case, there was an equitable assignment of the funds represented by the Phil Stadtler check. That, therefore, the Defendant, El Paso National Bank, was justified in charging the account of the Plaintiff Bank with the amount of

$10,000.00 (the Ganado y Carnes check in question here), and that, accordingly, the Plaintiff should take nothing in its suit against the Defendant Bank."

Appellant urges points contending that the court erred in holding that a drawee bank who has neither certified a check nor promised to pay the same in writing is liable on the check based on the theory of equitable assignment of funds arising out of a telephone conversation in which it is contended that the drawee bank made an oral guarantee or promise to protect the check out of funds on deposit and erred in holding that appellant, under the facts found in paragraph F and G of the court's finding of fact, accepted the charge made against its account in appellee bank on February 9, 1965, because the check remained a negotiable instrument, and in order to accept such charge and become liable therefor appellant must have met the requirements of the uniform negotiable instruments act, and neither by the facts found in the findings of fact or the evidence herein presented did appellant as a matter of law so do.

These points are not well taken. Appellant correctly contends that the mere drawing and delivery of a check upon a bank does not constitute an assignment of any part of the funds of the drawer in the bank even though the bank has orally promised to pay the check. Article 5941, Section 132 and Article 5947, Section 189, Vernon's Ann.Texas Civ.St., provide in effect that a check of itself does not constitute an assignment of any part of the funds of the drawer in the bank; that the bank is not liable to the holder "unless and until it accepts or certifies the check", and that the acceptance must be in writing and signed by the bank. In this connection see the following cases: Kilgore National Bank v. Moore Bros. Lumber Company, 129 Tex. 92, 102 S.W.2d 200, (Com.Apps.1937); Bradley Grain Company v. Farmers & Merchants National Bank, Tex.Civ.App., 274 S.W.2d 178, (Ref. n. r. e. 1954); Huffman v. Farmers' National Bank of Cross Plains, 10 S.W.2d 753, (Ct.Civ.Apps., 1928, no writ history); First National Bank of Mathis v. Dickson, 59 S.W.2d 179 (Ct.Civ. Apps., 1933, no writ history.).

It is well settled, however, that the parties may agree orally or otherwise that the transaction shall operate as an assignment and where it is shown that it was the intention of the parties that the check was to be paid out of a particular fund there is an equitable assignment of that much of the fund. Hatley v. West Texas National Bank, 284 S.W. 540, (Com.Apps. 1926); Slaughter v. First National Bank of Lamesa, 18 S.W.2d 754, (Ct.Civ.Aps., 1929, writ ref.); E. C. Palmer & Company v. First National Bank, 2 S.W.2d 939, (Ct.Civ. Apps., 1928, no writ history); Moran Bros., Inc. v. Yinger, Trustee, 10 Cir., 323 F.2d 699. It is held that an "equitable assignment" does not depend upon any particular form of words, but a court of equity constructs the assignment out of the agreement and situation of the parties as shown by either direct or circumstantial evidence. Sorenson v. Dawdy, 196 S.W.2d 687, (Ct. Civ.Apps.1946, no writ history), and cases cited therein.

In the instant case the evidence shows that Romay opened an account in Banco Longoria in the name of Ganado y Carnes by depositing the $10,796.45 Stadtler check and received immediate credit thereon; that the Stadtler check was thereafter honored and paid; that the $10,000.00 check in question drawn on Banco Longoria was given by Ganado and received and credited by El Paso National Bank to the account of Ganado with the representation and statement by Ganado's representatives that the check would be paid out of Ganado's account in Banco Longoria opened with the Stadtler check and out of the proceeds of that check. The evidence further shows that Banco Longoria was advised of this agreement between the El Paso Bank and the representatives of Ganado and agreed to comply therewith and to honor the $10,000.00 check. This was

in effect a direction from Ganado to Banco Longoria to make the Stadtler check a special deposit to the extent of $10,000.00. Under this evidence the court did not err in holding that there was an equitable assignment of $10,000.00 of the funds in Ganado's account represented by the Stadtler check. See Bradley Grain Company v. Farmers and Merchants National Bank, supra. Banco Longoria was therefore not entitled to recover and judgment was properly rendered for the El Paso bank.

Appellant's points are overruled. The judgment is affirmed.